**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

FACEL CASTA,

     Plaintiff,

        v.                        CIVIL NO.: 17-2359 (MEL)

CITI INTERNATIONAL FINANCIAL
SERVICES, LLC,

     Defendant.

## OPINION AND ORDER

Ms. Facel Casta ("Plaintiff" or "Ms. Casta") filed an amended complaint against Citi International Financial Services, LLC ("Defendant" or "CIFS") on September 10, 2019. ECF No. 26. In her complaint, Plaintiff alleges that CIFS retaliated against her and interfered with her medical leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, et seq. Additionally, Plaintiff claims that she was terminated without "just cause" in violation of Title 29, Annotated Laws of Puerto Rico, Section 185a ("Law 80"). Plaintiff also alleges CIFS failed to reserve her employment pursuant to Title 11, Annotated Laws of Puerto Rico, Section 7 ("Law 45"). Lastly, it is contended by Plaintiff that CIFS retaliated against her for seeking treatment at the State Insurance Fund in violation of Title 29, Annotated Laws of Puerto Rico, Section 194 ("Law 115").

Pending before the court is Defendant's motion for summary judgment. ECF No. 33. Defendant argues, *inter alia*, that Plaintiff "has no viable cause of action under any of the statutes invoked in her Complaint and, accordingly, all her claims should be summarily dismissed with prejudice." ECF No. 33-2, at 3. Plaintiff responded in opposition on March 16, 2020. ECF Nos. 56, 57.

## I.      Standard of Review

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, the party cannot merely "rely on an absence of competent evidence, but must affirmatively point to specific facts [in the record] that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (citation omitted). The party need not, however, "rely only on *uncontradicted* evidence . . . .  So long as the [party]'s evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to

determine which version of the facts is most compelling." <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original) (citation omitted).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." <u>Griggs-Ryan</u>, 904 F.2d at 115. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood." <u>Greenburg v. P. R. Mar. Shipping Auth.</u>, 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## II.    Uncontested Material Facts[1]

CIFS, a subsidiary of Citigroup, Inc., is a registered broker dealer that manages investment products for clients located in Latin America. CIFS offers services to clients in Brazil, Argentina, Colombia, Peru, Chile, Venezuela, Dominican Republic, and Central America from Puerto Rico. CIFS services clients in these countries remotely due to local legal constraints. ECF No. 33-1, at 1, ¶ 1; ECF No. 57, at 2, ¶ 1. Late in 2014, Plaintiff was informed by Ms. Grisel Crespo, a Principal at CIFS and one of her former students of Portuguese, that there

---

[1] The following proposed facts are deemed admitted despite Plaintiff's denial because the denial does not contradict the relevant proposed facts: 13, 17, 18, 19, 23, 24, 25, 26, 28, 32, 33, 34, 35, 44, 55, 61, 62, 63, 64, 65, 67, 71, 73, 78, 80, 81, 92. Proposed fact 86 is deemed admitted despite Plaintiff's denial because the denial is not supported by the record citations. The facts in Plaintiff's response to the motion for summary judgment (ECF No. 57, at 28-31) are deemed admitted to the extent that they are relevant and supported by their record citations because Defendant did not timely reply to these facts. <u>See</u> Local Rule 56(e). On March 17, 2020, Defendant requested leave to file a reply to Plaintiff's response to the motion for summary judgment by May 7, 2020. ECF No. 59. The court granted Defendant's request for leave to file a reply by May 7, 2020. ECF No. 60. Defendant, however, did not file a reply until August 20, 2020. ECF No. 61. Therefore, Defendant's reply was untimely, and thus, stricken from the record and not considered in resolving the pending motion for summary judgment.

3

was an opening for a Trilingual Relationship Management Associate position at CIFS, prompting

Plaintiff to apply for the position. ECF No. 33-1, at 2, ¶ 3; ECF No. 57, at 2, ¶ 3.

Plaintiff was interviewed by Ms. Marcelle Díaz, Sales and Service Manager, and

Ms. Suzette Ramírez, Human Resources Generalist. Plaintiff was informed in the interview that

she would be required to take the Series 7 exam offered by the Financial Industry National

Regulatory Authority ("FINRA"). ECF No. 33-1, at 2, ¶ 4; ECF No. 41-1, at 47-49; ECF No. 57,

at 3, ¶ 4. The Series 7 exam, also known as the General Securities Representative Exam,

qualifies an individual who passes the exam to (1) perform tasks on an investment account; (2)

place transactions; and (3) speak with clients about investments. ECF No. 33-1, at 3; ¶ 11; ECF

No. 57, at 4, ¶ 11.

CIFS required all employees that worked with clients to hold the Series 7 license or to

pass the exam within a certain period of time during employment. ECF No. 33-1, at 3, ¶ 12; ECF

No. 57, at 5, ¶ 12. Relationship Management Associates were required to hold a Series 7 license

because their responsibilities included placing transactions for clients in different Latin

American countries. ECF No. 33-1, at 3, ¶ 13; ECF No. 33-8, at 2, ¶ 9.

Employees that had to take the Series 7 exam were required to complete internal trainings

at CIFS regarding different topics related to the Series 7 exam. These trainings also included

tests that employees were required to pass. ECF No. 33-1, at 4, ¶ 16; ECF No. 57, at 6, ¶ 16.

CIFS provided study books for the employees that had to take the Series 7 exam. Once the

employee completed the books and internal trainings, Human Resources would review the data

and verify that the trainings were completed. If the trainings were completed, Human Resources

would contact the Registration Department. ECF No. 33-1, at 4, ¶¶ 17-18; ECF No. 41-5, at 11-

12. The Registration Department would then contact FINRA and request the opening of a

4

window for the employee to take the Series 7 exam. The window would remain open for a period of 90 days. ECF No. 33-1, at 4, ¶ 19; ECF No. 41-5, at 11-12.

On December 29, 2014, CIFS hired Plaintiff as a Relationship Management Associate and she signed her employment contract that same day. Ms. Díaz was her supervisor. ECF No. 33-1, at 2, ¶ 5; ECF No. 57, at 3, ¶ 5; ECF No. 57, at 28, ¶ 96. Plaintiff's employment contract states that she was required to pass the Series 7 exam within 12 months of accepting the employment offer. ECF No. 33-1, at 2, ¶ 8; ECF No. 57, at 3-4, ¶ 8; ECF No. 33-9. Accordingly, that 12-month period concluded on December 29, 2015. ECF No. 33-1, at 3, ¶ 9; ECF No. 57, at 4, ¶ 9. Plaintiff was aware at the time she signed the employment contract that she was required to pass the Series 7 exam within 12 months. ECF No. 33-1, at 3, ¶ 10; ECF No. 57, at 4, ¶ 10; ECF No. 41-1, at 41.

Plaintiff began to work at CIFS on January 22, 2015. ECF No. 33-1, at 3, ¶ 15; ECF No. 57, at 5-6, ¶ 15. Plaintiff's primary task as a Relationship Management Associate was assisting brokers in the Mass Affluent business unit of CIFS. In this role, she was responsible for answering the phone, opening new accounts, and servicing clients, among other things. ECF No. 33-1, at 2, ¶ 7; ECF No. 57, at 3, ¶ 7. In January 2015, after she began working at CIFS, Plaintiff requested the Series 7 exam study books from Ms. Díaz. ECF No. 33-1, at 4, ¶¶ 20-21; ECF No. 57, at 7, ¶¶ 20-21. Ms. Díaz responded that she would complete the paperwork for her request. At the beginning of March 2015, Plaintiff followed up on her book request and Ms. Díaz informed her that the book authorization request was pending before Mr. Moisés Valladares. ECF No. 33-1, at 4, ¶ 22; ECF No. 57, at 7-8, ¶ 22.

On April 27, 2015, Plaintiff received the study books to prepare for the Series 7 exam. ECF No. 33-1, at 4, ¶ 23; ECF No. 57, at 8, ¶ 23; ECF No. 41-1, at 42. Plaintiff began to study

the books immediately after she received them. She would study for 3 hours after her work shift ended every day, in addition to Saturdays and Sundays. ECF No. 33-1, at 5, ¶ 24; ECF No. 57, at 8, ¶ 24. Plaintiff also took exam simulators to prepare for the Series 7 exam. ECF No. 33-1, at 5, ¶ 25; ECF No. 57, at 8, ¶ 25. At one point, Plaintiff claimed to have had no work to do during working hours so Ms. Díaz told Plaintiff to study for the Series 7 exam on the clock. ECF No. 33-1, at 5, ¶ 26; ECF No. 57, at 9, ¶ 26.

In May 2015, Plaintiff visited Dr. José González ("Dr. González") for treatment for anxiety due to work related stress. ECF No. 33-1, at 5, ¶ 27; ECF No. 57, at 9, ¶ 27. Plaintiff went to see Dr. González because she was feeling anxious, depressed, and she was unable to sleep. Plaintiff also saw Dr. González because she could not concentrate well enough to study for the Series 7 exam. ECF No. 33-1, at 5, ¶ 28; ECF No. 41-1, at 6-7. Dr. González diagnosed Plaintiff with Type II Bipolar Disorder and prescribed Seroquel, which is an anxiety medication. ECF No. 33-1, at 5, ¶¶ 29-30; ECF No. 57, at 10, ¶¶ 29-30.

Plaintiff's routine then changed to leave work at 5:30 PM, arrive at her home an hour later, eat supper, bathe, and sit down to study. According to Plaintiff, she would begin to study at about 7:30 PM and would not deviate from this routine. Plaintiff would take Seroquel about an hour after she began to study each night. She would then continue to study until the medication made her sleepy. ECF No. 33-1, at 5-6, ¶ 32; ECF No. 57, at 10, ¶ 32.

On June 2, 2015, Plaintiff asked CIFS to open a window for the Series 7 exam and requested to take the exam on September 28, 2015. ECF No. 33-1, at 8, ¶ 51; ECF No. 57, at 15, ¶ 51. In July 2015, Plaintiff had her mid-year evaluation where Ms. Díaz informed her that she was not complying with certain requirements of her position. ECF No. 33-1, at 6, ¶¶ 33, 34; ECF No. 41-5, at 17; ECF No. 41-6; ECF No. 33-8, at 2, ¶ 10. According to Ms. Díaz, Plaintiff had a

pattern of tardiness in arriving to work on time. ECF No. 33-1, at 8, ¶ 55; ECF No. 41-5, at 18.

Ms. Díaz had multiple conversations with Plaintiff regarding failures to complete tasks such as

opening accounts. Various brokers also complained due to Plaintiff's failure to complete tasks.

ECF No. 33-1, at 6, ¶ 35; ECF No. 41-5, at 13; ECF No. 57, at 11, ¶ 35.

      Shortly after the mid-year evaluation, Plaintiff suffered a psychotic episode that led her to

seek out medical treatment. ECF No. 57, at 28, ¶ 97; ECF No. 57-6, at 3-5. Plaintiff exhibited

signs of hypomania, delusions, paranoia, anxiety, verbiage, and irritability. ECF No. 33-1, at 6,

¶ 37; ECF No. 57, at 12, ¶ 37. After a psychiatric evaluation, Plaintiff was hospitalized on an

outpatient basis at the First Hospital Panamericano from July 14, 2015 to July 22, 2015. ECF No.

57, at 28, ¶ 98; ECF No. 57-6, at 3-5; ECF No. 57-7. During this partial hospitalization, Plaintiff

was diagnosed with Bipolar Disorder Type I, Manic Phase with Psychosis. ECF No. 57, at 28,

¶ 99; ECF No. 57-7, at 3. The difference between Type I and Type II Bipolar Disorder is that the

manic phases predominate over depressive phases in Type I while the depressive phases

predominate the manic phases in Type II. ECF No. 33-1, at 7, ¶ 40; ECF No. 57, at 12, ¶ 40.

Plaintiff was experiencing a manic phase that included psychosis during her time at First

Hospital Panamericano. ECF No. 33-1, at 7, ¶ 41; ECF No. 57, at 12-13, ¶ 41.

      After this hospitalization, Plaintiff was referred to psychologist Dr. Gilberto Geigel

Cervoni ("Dr. Geigel"). ECF No. 33-1, at 7, ¶ 44; ECF No. 41-1, at 13-14. During her first visit

with Dr. Geigel on August 11, 2015, Plaintiff explained that she had suffered from psychosis

with delusions of persecution and that she had seen crooks dressed in red with chihuahua dogs

following her. Plaintiff recognized this was caused by her psychosis. ECF No. 33-1, at 7, ¶ 45;

ECF No. 57, at 13, ¶ 45. Plaintiff also told Dr. Geigel that she had to purchase a safe because she

felt that people were going through all her documents and her purse. Dr. Geigel noted that this

claim suggested that Plaintiff was suffering from paranoia. ECF No. 33-1, at 7, ¶ 47; ECF No. 57, at 14, ¶ 47. By her September 1, 2015 appointment with Dr. Geigel, Plaintiff was still exhibiting symptoms of paranoia. ECF No. 33-1, at 8, ¶ 49; ECF No. 57, at 14, ¶ 49. On September 24, 2015, Plaintiff told Dr. Geigel that she felt that people from CIFS were following her in Mayagüez while she visited her grandfather and that she believed that they also tracked the transactions she made with her ATM card. Plaintiff told Dr. Geigel that she believed her story was 25% real and the rest paranoia. ECF No. 33-1, at 8, ¶ 50; ECF No. 57, at 15, ¶ 50.

Plaintiff did not take the Series 7 exam on September 28, 2015. According to Plaintiff, she did not take the Series 7 exam then because her study schedule had changed due to the fact that she was on the medications Depakote and Seroquel.[2] ECF No. 33-1, at 8, ¶ 52; ECF No. 57, at 15, ¶ 52; ECF No. 41-2, at 11-12. Plaintiff, however, was already taking Seroquel when she requested CIFS to open a window for the Series 7 exam on June 2, 2015. ECF No. 33-1, at 8, ¶ 53; ECF No. 57, at 15, ¶ 53; ECF No. 41-2, at 13.

In October 2015, Plaintiff reported to Ms. Ramírez that she was feeling harassed by emails that Ms. Díaz sent to her regarding her attendance. ECF No. 57, at 29, ¶ 103; ECF No. 57-1, at 7-9. Plaintiff also reported to Ms. Ramírez that Ms. Díaz told Plaintiff that she wanted to punch Plaintiff. ECF No. 57, at 29, ¶ 105; ECF No. 57-1, at 11-12. Ms. Díaz, however, denies having ever made the statement that she wanted to punch Plaintiff. ECF No. 57, at 29, ¶ 106; ECF No. 57-4, at 2-3. Ms. Ramírez talked with Ms. Díaz regarding how she should interact with Plaintiff. ECF No. 57, at 29, ¶ 107; ECF No. 57-1, at 13.

---

[2] The parties have not cited to any evidence in the record suggesting that Defendant was aware in September 2015 of the specific medical condition that Plaintiff was diagnosed with and what specific medications she was taking for that medical condition.

On December 18, 2015, Ms. Ramírez sent an email to Plaintiff informing her that she still had internal trainings pending for the Series 7 exam. This email detailed a total of 14 internal trainings that Plaintiff had mostly already taken but had either failed the exam or not taken the exam at all. ECF No. 33-1, at 10, ¶ 70; ECF No. 57, at 20, ¶ 70. On December 21, 2015, Ms. Díaz sent an email to Plaintiff that requested that she create an action plan to complete the trainings that were still pending. ECF No. 33-1, at 10, ¶ 71; ECF No. 41-1, at 51-52; ECF No. 41-10.

On December 23, 2015, Plaintiff received a Formal Warning from Ms. Díaz relating to issues with her time and attendance. She was placed on a 90-day revision period. ECF No. 33-1, at 9, ¶ 56; ECF No. 57, at 16, ¶ 56; ECF No. 41-8. That same afternoon, Plaintiff went to Ms. Ramírez's office and informed her that she did not feel well and would leave to seek treatment at the State Insurance Fund ("SIF"). ECF No. 33-1, at 9, ¶ 58; ECF No. 57, at 17, ¶ 58. Plaintiff also told Ms. Ramírez that she was not prepared to take the Series 7 exam. ECF No. 57, at 29, ¶ 110; ECF No. 57-6, at 23-24. At SIF, Plaintiff indicated that she was seeking treatment because "[f]or 11 months my boss has been harassing me (mobbing), 'using' 'perks' of the business (AHS). In June of this year I suffered psychosis for this reason, and reported the pattern of harassment 3 times in Human Resources. I tried to exhaust remedies, and today before Christmas she again used business resources to harass me." ECF No. 57, at 30, ¶ 112; ECF No. 57-8, at 2.

On December 24, 2015, Plaintiff returned to the office and delivered the Rest Order issued by SIF to Ms. Ramírez that granted her leave until January 7, 2016. ECF No. 57, at 30, ¶ 113; ECF No. 41-4, at 5-6; ECF No. 57-5, at 1. The SIF Form indicated that Plaintiff was being treated for a mental condition. ECF No. 57, at 30, ¶ 113; ECF No. 57-1, at 18; ECF No. 57-5, at

1. Ms. Ramírez did not inform anyone of this documentation. ECF No. 33-1, at 9, ¶ 59; ECF No. 57, at 17, ¶ 59. Plaintiff received treatment at the SIF from December 23, 2015 until January 7, 2016. ECF No. 33-1, at 9, ¶ 60; ECF No. 57, at 17, ¶ 60; ECF No. 41-4, at 6.

Employment leaves are handled by MetLife, who CIFS subcontracts to manage these matters directly with the employees. ECF No. 33-1, at 9, ¶ 61; ECF No. 41-4, at 6. Plaintiff was responsible for submitting all documentation and requests directly to Metlife. ECF No. 33-1, at 9, ¶ 64; ECF No. 41-4, at 58. In these cases, CIFS management and Human Resources have no intervention or interaction with MetLife. MetLife merely informs CIFS that the employee's request has been approved, and the dates when the employee will be out. ECF No. 33-1, at 9, ¶ 62; ECF No. 41-4, at 7-8. This procedure occurs for all types of leave. ECF No. 33-1, at 9, ¶ 63; ECF No. 41-4, at 7-8. Thus, the only thing that Ms. Ramírez did was notify Ms. Díaz that Plaintiff would be out until January 7, 2016. ECF No. 33-1, at 9, ¶ 65; ECF No. 41-4, at 6. Although Ms. Díaz knew that Plaintiff was on leave, she did not know that the specific reason that Plaintiff was out on leave was due to her emotional condition. ECF No. 33-1, at 10, ¶ 67; ECF No. 41-5, at 16.

On December 30, 2015, Plaintiff responded to the Formal Warning where she stated that that she had already complained to Human Resources regarding Ms. Díaz's alleged harassment. ECF No. 57, at 30, ¶ 114; ECF No. 57-2, at 1-4. Plaintiff also alleged there were discrepancies regarding her attendance issues. ECF No. 57, at 30, ¶ 116; ECF No. 57-2, at 3. Plaintiff further informed in her response that she was under physician prescribed medication that made it difficult for her to get up in the mornings. ECF No. 57, at 30, ¶ 117; ECF No. 57-2, at 4.

On January 12, 2016, Plaintiff received a Final Warning which stated that she had not fulfilled the requirement of her position that she pass the Series 7 exam by December 29, 2015.

ECF No. 33-1, at 10, ¶ 72; ECF No. 41-2, at 25-26; ECF No. 41-11. The Final Warning stated that Plaintiff was required to take and pass the Series 7 exam within 45 days of receiving the Final Warning. ECF No. 33-1, at 10, ¶ 73; ECF No. 41-11; ECF No. 41-2, at 27. Plaintiff completed all the training requirements needed to open the window for the Series 7 exam on January 21, 2016. ECF No. 33-1, at 11, ¶¶ 76, 77; ECF No. 41-2, at 28-29. Plaintiff requested the opening of the window and the exam was set for March 24, 2016. ECF No. 33-1, at 11, ¶ 78; ECF No. 41-2, at 29-30.

In January 2016, Plaintiff filed a workplace complaint for harassment and retaliation relating to the Formal Warning. ECF No. 33-1, at 11, ¶ 79; ECF No. 33-8, at 2, ¶ 14. Ms. Ramírez investigated this complaint and she concluded that Plaintiff was not the victim of harassment and retaliation. ECF No. 33-1, at 11, ¶ 80; ECF No. 33-8, at 2, ¶ 15. Ms. Ramírez scheduled a meeting with Plaintiff for February 1, 2016 to discuss the findings of the investigation. ECF No. 33-1, at 11, ¶ 81; ECF No. 33-8, at 3, ¶ 16. However, after Ms. Ramírez invited Plaintiff to the meeting, Plaintiff left the office and went to the SIF to receive treatment once again. ECF No. 33-1, at 12, ¶ 82; ECF No. 33-8, at 3, ¶ 17; ECF No. 57, at 24-25, ¶ 82.

On February 2, 2016, Plaintiff was evaluated and treated by a psychiatrist at the SIF. The SIF placed her on a medical leave of absence until February 23, 2016. On February 22, 2016, Plaintiff was again evaluated by a SIF physician and placed on a medical leave of absence until March 7, 2016. On March 8, 2016, Plaintiff was evaluated by a SIF physician and placed on medical leave until March 21, 2016. ECF No. 57, at 31, ¶ 120; ECF No. 57-5, at 2-5. On March 28, 2016, Plaintiff was evaluated by a SIF physician and excused from work on March 28, 2016 and March 29, 2016. ECF No. 57, at 31, ¶ 120; ECF No. 57-5, at 6; ECF No. 56, at 17. Therefore, it is undisputed that Plaintiff was on SIF leave from February 2, 2016 until March 21,

2016. It is also undisputed that Plaintiff was on SIF leave on March 28, 2016 and March 29, 2016. ECF No. 33-1, at 12, ¶ 83; ECF No. 57, at 25, ¶ 83. Defendant, however, contends that Plaintiff was also on SIF leave from March 22, 2016 until March 27, 2016.[3] Id.

Plaintiff took the Series 7 exam on March 24, 2016 but did not pass it. She was immediately informed upon completing the exam that she did not pass. ECF No. 33-1, at 12, ¶ 84; ECF No. 33-8, at 3, ¶ 19; ECF No. 57, at 25, ¶ 84. On March 30, 2016, Plaintiff returned to work and was reinstated in her position. ECF No. 33-1, at 12, ¶ 86; ECF No. 33-8, at 3, ¶ 20. On March 31, 2016, CIFS terminated Plaintiff's employment. ECF No. 33-1, at 12, ¶ 88; ECF No. 57, at 26, ¶ 88.

On March 31, 2016, Plaintiff informed Dr. Geigel that she had been terminated for not passing the Series 7 exam. She also informed him that she was going to sue CIFS because she was sick while she studied for the exam. ECF No. 33-1, at 12, ¶ 89; ECF No. 57, at 26-27, ¶ 89. According to Plaintiff, however, after she was informed in December 2015 that she needed to create an action plan, she never informed CIFS management that she had trouble studying for the Series 7 exam due to her taking of Seroquel, nor did she request additional time to take the Series 7 exam for this same reason. ECF No. 33-1, at 13, ¶ 92; ECF No. 41-2, at 32-33.

## III.   Legal Analysis

### A. Plaintiff's FMLA Claims

"The FMLA was enacted to help working women and men balance the competing demands of work and personal life." Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F. 3d 711, 718 (1st Cir. 2014) (citing Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 159 (1st Cir.

---

[3] According to Plaintiff's response, Plaintiff was on SIF leave from February 2, 2016 to March 21, 2016 and again on March 28, 2016 and March 29, 2016. ECF No. 57, at 25, ¶ 83. Taking Plaintiff's account as true, then Plaintiff would not have been on SIF leave when she took the Series 7 exam on March 24, 2016.

1998)); see 29 U.S.C. § 2601(b)(1)-(2). Pursuant to the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." Watkins v. J & S Oil Co., Inc., 164 F.3d 55, 59 (1st Cir. 1998) (citing 29 U.S.C. § 2612(a)(1)(D)). "[U]pon the employee's return from a qualified leave, the employer must reinstate the employee to the same position or an alternate position with equivalent pay, benefits, and working conditions, and without loss of accrued seniority." Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 330 (1st Cir. 2005) (citing 29 U.S.C. § 2614(a)).

To enforce these rights the FMLA provides for two types of claims: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the [FMLA], and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the [FMLA]." González-Rodríguez v. Potter, 605 F. Supp. 2d 349, 370 (D.P.R. 2009) (citing 29 U.S.C. § 2615(a)(1) & (2)). "To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." Id. (citing Colburn, 429 F.3d at 331). On the other hand, "[w]hen a plaintiff asserts a claim of retaliation under the FMLA, in the absence of direct evidence of the employer's intent, the court must apply the same burden-shifting framework established by the Supreme Court in McDonnell Douglas for evaluating Title VII discrimination claims." Id.

### 1. Plaintiff's FMLA Interference Claim

Plaintiff alleges that CIFS interfered with her FMLA leave[4] "because it forced [her] to sit and take a Series 7 exam while on medication and under medical care." ECF No. 56, at 21. "To

---

[4] Throughout the motion for summary judgment and response to the motion for summary judgment, the parties use the terms SIF leave and FMLA leave interchangeably. See ECF No. 56, at 17-23; ECF No. 33-2, at 14-17.

prevail on an FMLA-interference claim, an employee must demonstrate that: (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her benefits to which she was entitled." Ocasio v. Oriental Bank, Civ. No. 15-1309, 2016 WL 3945172, at *8 (D.P.R. July 1, 2016); Wheeler v. Pioneer Dev. Servs., Inc., 349 F. Supp. 2d 158, 164 (D. Mass. 2004); see also Smith v. Hope Sch., 560 F.3d 694, 699 (7th Cir. 2009).

There is no controversy that Plaintiff meets the first four factors required to assert a successful interference claim. Therefore, the issue is whether CIFS denied Plaintiff FMLA benefits to which she was entitled. Evaluated in the light most favorable to Plaintiff, there is no evidence that suggests CIFS denied or impaired Plaintiff's FMLA rights. It is undisputed that Plaintiff was on FMLA leave from December 23, 2015 until January 7, 2016. See ECF No. 33-1, at 9, ¶ 60; ECF No. 57, at 17, ¶ 60. It is also undisputed that Plaintiff was on FMLA leave from February 2, 2016 until March 21, 2016 and again on March 28, 2016 and March 29, 2016. See ECF No. 57-5, at 1-5; ECF No. 33-1, at 12, ¶ 83; ECF No. 57, at 25, ¶ 83. Plaintiff does not allege that she was denied FMLA leaves or that CIFS impaired these leaves. Instead, Plaintiff alleges that CIFS interfered with her FMLA leave when it issued a Final Warning on January 12, 2016, five days after she returned from FMLA leave, that imposed a 45-day deadline to pass the Series 7 exam despite her mental condition. ECF No. 56, at 20-21.

Plaintiff's claim that the Final Warning constituted interference with her FMLA leave is unfounded. Plaintiff contends that her mental condition was not considered by Ms. Ramírez before the issuance of the Final Warning. ECF No. 57, at 31, ¶ 119; ECF No. 57-1, at 18-19. The fact that Ms. Ramírez did not consider Plaintiff's mental condition before the Final Warning was issued does not show that Defendant interfered with her FMLA leave. Plaintiff had already

14

returned from her FMLA leave when the Final Warning was issued on January 12, 2016. Furthermore, Plaintiff did not have any scheduled FMLA leave for a future date when she received the Final Warning. Also, the fact that Plaintiff had a mental condition and was taking medication at the time of the Final Warning does not show that CIFS or Metlife interfered or denied her FMLA leave applications. Moreover, there is no evidence that has been brought to the attention of the court suggesting that Plaintiff requested that her March 24, 2016 Series 7 exam be postponed or that any such request was ignored or denied by CIFS. Contrary to what happened on September 28, 2015, Plaintiff opted to take the test on March 24, 2016 rather than communicating to CIFS that she needed an additional period of time to take the exam due to her health condition, FMLA or SIF leave. Thus, Plaintiff's FMLA interference claim fails because she received all the FMLA leave that she requested and because she never requested the postponement of the March 24, 2016 exam due to her medical condition. See Ocasio, 2016 WL 3945172, at *8.

### 2. Plaintiff's FMLA Retaliation Claim

Plaintiff also alleges that CIFS retaliated against her for taking FMLA leave by terminating her employment. ECF No. 56, at 21. "In addition to granting workers important rights, the FMLA also precludes employers from retaliating against employees for exercising those rights." McArdle v. Town of Dracut/Dracut Public Schools, 732 F.3d 29, 35 (1st Cir. 2013). In the case at hand, there is no direct evidence of retaliation. Thus, Plaintiff's FMLA retaliation claim will be analyzed under the McDonnell Douglas burden-shifting framework. See Hodgens v. General Dynamics Corp., 144 F.3d 151, 160 (1st Cir. 1998). Under the McDonnell Douglas framework,

> a plaintiff employee must carry the initial burden of coming forward with sufficient
> evidence to establish a prima facie case of discrimination or retaliation. If he does

so, then the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's [termination] . . . . If the employer's evidence creates a genuine issue of fact, the presumption of discrimination drops from the case, and the plaintiff retains the ultimate burden of showing that the employer's stated reason for terminating him was in fact a pretext for retaliating against him for having taken protected FMLA leave.

Id. (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

### a. Plaintiff's Prima Facie Burden

"To make out a prima facie case of FMLA retaliation, an employee must show: (1) she availed herself of a protected FMLA right; (2) she was adversely affected by an employment decision; and (3) there was a causal connection between her protected conduct and the adverse employment action." Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 719 (1st Cir. 2014) (citing Orta–Castro v. Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 113-114 (1st Cir. 2006)). In the case at bar, there is no dispute as to the first two elements. Plaintiff availed herself of FMLA leave on multiple occasions and her termination clearly constitutes an adverse employment action. It is contended by Defendant, however, that Plaintiff has not established a causal connection between her FMLA leave and termination. ECF No. 33-2, at 16-17.

In order to establish a causal connection, an employee must show that the adverse employment actions were taken against her because she exercised a right protected by the FMLA. See Carrero-Ojeda, 755 F.3d at 719. In general, the burden to show a causal connection is "quite easy to meet." See Crevier v. Town of Spencer, 600 F. Supp. 2d 242, 261 (D. Mass. 2008) (citing Hodgens, 144 F.3d at 165–66). "'Very close' temporal proximity between protected activity and an adverse action can satisfy a plaintiff's burden of showing causal connection." Kleya v. Karl Storz Endovision, 385 F. Supp. 3d 99, 108 (D. Mass 2019) (citing

Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 15 (1st Cir. 2012)); see also Germanowski v. Harris, 854 F.3d 68, 74 (1st Cir. 2017).

In the case at hand, Plaintiff returned to work from FMLA leave on March 30, 2016 but was terminated on March 31, 2016. ECF No. 33-1, at 12, ¶¶ 86-88. The close temporal proximity of one day between Plaintiff's return from FMLA leave and her termination is sufficient to establish a causal connection at the prima facie stage. See Kleya, 385 F. Supp. 3d at 108. Thus, Plaintiff has satisfied her prima facie burden at step one of the McDonnell Douglas framework.

### b. Defendant's Burden at Step Two of the McDonnell Douglas Framework

Once Plaintiff has satisfied her prima facie burden, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination." Pagan-Colón v. Walgreens of San Patricio, Inc., 697 F.3d 1, 9 (1st Cir. 2012) (citing Hodgens, 144 F.3d at 160–61). In the case at hand, CIFS has presented evidence that Plaintiff was terminated because she failed to pass the Series 7 exam in accordance with the requirements of her position. ECF No. 33-2, at 17. Plaintiff's employment contract required her to pass the Series 7 exam within 12 months of her accepting the employment offer. ECF No. 33-1, at 2, ¶ 8; ECF No. 33-9, at 1. Plaintiff signed the employment contract on December 29, 2014, and thus, was required to pass the Series 7 exam by December 29, 2015. ECF No. 33-1, at 2-3, ¶¶ 5, 9.

On January 12, 2016, Plaintiff received a Final Warning that imposed a 45-day deadline to pass the Series 7 exam after she did not pass it by December 29, 2015. ECF No. 41-11. Plaintiff took the Series 7 exam on March 24, 2016 but did not pass the exam. ECF No. 33-1, at 12, ¶ 84; ECF No. 33-8, at 3, ¶ 19. Defendant has proffered a legitimate and nondiscriminatory reason for Plaintiff's termination, and thus, has satisfied its burden at step two.

**c.  Plaintiff's Burden at Step Three of the <u>McDonnell Douglas</u> Framework**

Because Defendant has proffered a legitimate, nondiscriminatory reason for Plaintiff's termination, Plaintiff "retains the ultimate burden of showing that the employer's stated reason for terminating [her] was in fact a pretext for retaliating against [her] for having taken protected FMLA leave." <u>Pagan-Colón</u>, 697 F.3d 1 at 9 (citing <u>Hodgens</u>, 144 F.3d at 160–61). In support of her retaliation claim, Plaintiff alleges that she "was on-and off receiving psychiatric care from December 23, 2015 through the end of March 2016. She was placed with onerous requirements of passing the Series 7 exam without consideration of her mental health. She advised she was unfit to take the exam. Unable to pass the exam, she was fired." ECF No. 56, at 21.

Plaintiff has not pointed to any evidence that shows that Defendant's proffered reason for her termination was pretext and that her termination was actually retaliation for taking FMLA leave. As stated earlier, Plaintiff was required by her employment contract to pass the Series 7 exam within 12 months of her accepting the employment offer. ECF No. 33-9. After Plaintiff failed to meet that deadline, she was given an additional 45 days in the Final Warning to pass the Series 7 exam. ECF No. 41-8.

Plaintiff has not cited to any evidence in the record indicating that Defendant knew the specific emotional condition for which Plaintiff was being treated. Nor has Plaintiff cited to any evidence in the record that Defendant knew the specific medication that Plaintiff was taking for her emotional condition. What the record evidence does reflect, however, is that Defendant found out in December 2015 that Plaintiff was being treated for an emotional condition at the SIF and that she continued to be treated for an emotional condition during her subsequent SIF leaves. ECF No. 57-1, at 18; ECF No. 57-5.

There is no citation to the evidence in the record to support the proposition that Plaintiff somehow conveyed to CIFS that it was unreasonable for her to be expected to take the exam in March 2016 due to her treatment at the SIF or her mental health condition. There is also no evidence cited to that Plaintiff requested the March 24, 2016 Series 7 exam be postponed. What the evidence does show, however, is that on March 24, 2016, Plaintiff took the Series 7 exam but did not pass. ECF No. 33-1, at 12, ¶ 84; ECF No. 33-8, at 3, ¶ 11. On March 31, 2016, Plaintiff herself told Dr. Geigel that she had been terminated for not passing the Series 7 exam. She did not tell Dr. Geigel that she was fired because she took FMLA leave.

There is a dearth of evidence for a jury to find that CIFS issued the Final Warning in retaliation for taking FMLA leave. Furthermore, while Plaintiff was terminated one day after she returned from FMLA leave, that is not sufficient by itself to show that Defendant's proffered reason for her termination was in fact pretext for retaliating against her for having taken protected FMLA leave. See Pagan-Colón, 697 F.3d at 10 ("[T]emporal proximity on its own is insufficient to establish pretext."); Donald v. Sybra, Inc., 667 F.3d 757, 763 (6th Cir. 2012) (explaining that in evaluating a plaintiff's FMLA claim, "temporal proximity cannot be the sole basis for finding pretext."); Reilly v. Cox Enterprises, Inc., Civ. No. 13-785, 2016 WL 843268, at *3 (D.R.I. Mar. 1, 2016) (holding that "evidence of temporal proximity is insufficient to establish pretext."); Taylor v. eCoast Sales Solutions, Ltd., 35 F. Supp. 3d 195, 204 (D.N.H. 2014) ("temporal proximity on its own is insufficient to establish pretext."). Thus, Plaintiff's FMLA interference and retaliation claims are DISMISSED WITH PREJUDICE.

**B. Puerto Rico Law Claims**

**1. Plaintiff's Law 80 Claim**

"Puerto Rico Law 80 prohibits dismissal of employees without just cause." Hoyos v. Telecorp Comm., Inc., 488 F.3d 1, 6 (1st Cir. 2007) (citing Alvarez–Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998)); 29 L.P.R.A. § 185a. "Under Law 80, once an employee proves that he was discharged and alleges that his dismissal was unjustified, his employer must establish by a preponderance of the evidence that the discharge was for good cause." Id. "Good cause for dismissal is 'related to the proper and normal operation of the establishment.'" Id. (quoting 29 L.P.R.A. § 185b). "Law 80 provides a non-exhaustive list of examples of what might constitute 'just cause.'" Millan-Feliciano v. Champs Sports, Civ. No. 11–1823, 2012 WL 4892865, at *4 (D.P.R. Oct. 15, 2012) (citing 29 L.P.R.A. § 185b). "The statute allows dismissals for a number of reasons, including an employee's improper or disorderly conduct, negligent attitude towards his work, and violations of the employer's rules and regulations." Alvarez-Fonseca, 152 F.3d at 28; see also González v. Spirit Airlines Inc., 922 F. Supp. 2d 178, 183 (D.P.R. 2013) ("The employee's improper conduct, poor job performance, and violation of the employer's policies are deemed "good cause" for dismissal under the statute."). However, "[a] discharge made by mere whim or fancy of the employer or without cause related to the proper and normal operation of the establishment shall not be considered as a discharge for [just] cause." Alvarez-Fonseca, 152 F.3d at 28 (quoting 29 L.P.R.A. § 185b).

In the case at hand, it is uncontested that Plaintiff was discharged on March 31, 2016 and alleged unjust dismissal. Thus, the burden of persuasion shifts to CIFS to prove that it had just cause. See Hoyos, 488 F.3d at 6. CIFS contends that it had just cause to terminate Plaintiff because she did not pass the Series 7 exam. ECF No. 33-2, at 3-7. As stated earlier, CIFS

required all employees that worked with clients to hold the Series 7 license or to pass the exam within a certain period of time during employment. ECF No. 33-1, at 3, ¶ 12. The Series 7 qualifies an individual to (1) perform tasks on an investment account; (2) place transactions; and (3) speak with clients about investments. ECF No. 33-1, at 3, ¶ 11. As a Relationship Management Associate, Plaintiff was tasked with servicing clients and placing transactions. ECF No. 33-1, at 2-3, ¶¶ 7, 13. Thus, the requirement that Plaintiff pass the Series 7 exam was "related to the proper and normal operation of the establishment." See Hoyos, 488 F.3d at 6.

Plaintiff's employment contract specifically states that she was required to pass the Series 7 exam within 12 months of accepting the employment offer. ECF No. 33-9, at 1. Plaintiff was aware when she signed the employment contract on December 29, 2014 that she had to pass the Series 7 exam within 12 months. ECF No. 33-1, at 3, ¶ 10. On January 12, 2016, CIFS issued a Final Warning to Plaintiff and provided her a period of 45 additional days to take and pass the Series 7 exam. [5] ECF No. 33-1, at 10, ¶ 72; ECF No. 41-11. On March 24, 2016, Plaintiff took the Series 7 exam but did not pass it. ECF No. 33-1, at 12, ¶ 84. Defendant has established by a preponderance of the evidence that Plaintiff was discharged for just cause under Law 80. See Hoyos, 488 F.3d at 6.

Because Defendant has satisfied its burden, Plaintiff can defeat summary judgment only if she can rebut Defendant's just-cause showing. See Echevarría v. AstraZeneca Pharm. LP, 856 F.3d 119, 141 (1st Cir. 2017). To shoulder her burden, Plaintiff must "adduce probative evidence that [Defendant] did not genuinely believe in or did not in fact terminate [Plaintiff] for the reason[s] given." Id. Plaintiff argues that her termination was without just cause because she was "compelled by CIFS to take the Series 7 exam on March 24, 2016, even though, at the time, she

---

[5] Plaintiff was actually given more than 45 days to pass the Series 7 exam because the 45-day period imposed by the Final Warning concluded on February 26, 2016. ECF No. 33-2, at 6; ECF No. 33-1, at 10, ¶ 72.

was mentally ill and unprepared to take it." ECF No. 56, at 11. Furthermore, Plaintiff argues that

at "no time did Defendant take into consideration Plaintiff's plight and the fact that she was

convalescing under the care of the SIF." Id. at 12. Plaintiff's claim that she was terminated

without just cause is unavailing. Plaintiff was informed at the beginning of her employment with

CIFS that she had to pass the Series 7 exam. When Plaintiff did not take the Series 7 exam within

the one-year time frame, she was given an additional 45 days but she did not pass the exam. As

previously stated, Plaintiff has not presented any evidence that she informed CIFS management

that she was unable to take the exam due to her mental health condition or prescribed

medications or that she requested the postponement of the March 24, 2016 Series 7 exam due to

her mental condition. The requirement that Plaintiff pass the Series 7 exam was "related to the

proper and normal operation of the establishment," and thus, Plaintiff's termination due to her

failure to pass the Series 7 exam constitutes just cause under Law 80. See Hoyos, 488 F.3d at 6;

González, 922 F. Supp. 2d 178 at 183. Plaintiff's Law 80 claim is DISMISSED WITH

PREJUDICE.

### 2. Plaintiff's Puerto Rico Law 45 Claim

Plaintiff also alleges that CIFS did not comply with the requirements of Law 45 because

she was not reinstated in her position. ECF No. 56, at 15-17. Article 5(a) of Law 45 provides:

> In the cases of working disability according to the provisions of this chapter; the
> employer shall be under obligation to reserve the job filled by the laborer or
> employee at the time the accident occurred, and to reinstate him therein, subject to
> the following conditions:
>
> (1) That the laborer or employee demand reinstatement from his employer in his
> job within the period of fifteen (15) days counted from the date the laborer or
> employee is discharged from treatment, provided such demand is not made after
> the lapse of twelve months from the date of the accident;
>
> (2) That the laborer or employee be mentally and physically fit to fill said job at the
> time he demands reinstatement from his employer, and

(3) That said job still exists at the time the laborer or employee demands reinstatement. (The job shall be understood to exist when the same is vacant or is being filled by another laborer or employee. The job shall be presumed to be vacant when the same was filled by another laborer or employee within thirty (30) days following the date in which the demand for reinstatement was made.)

Martínez v. Eagle Global Logistics, Civ. No. 9-2265, 2011 WL 3843918, at *20 (D.P.R. Aug. 26, 2011); 11 L.P.R.A. § 7.

Thus, Article 5(a) has two components: "(1) the obligation to keep the injured employee's job available for one year and, (2) the obligation to reinstate him after the SIF discharges him, so long as the employee seeks reinstatement within the one-year reserve period and he meets the three statutory conditions." Id. (citing Grillasca–Pietri v. Portorican American Broad. Co., Inc., 233 F. Supp. 2d 258, 265 (D.P.R. 2002)). "Nonetheless, the protection offered by Article 5(a) is not absolute because an employer charged with firing an employee illegally may raise the defense of just cause. An employer will not be liable for firing a disabled employee if there is just cause for the negative employment decision, regardless of whether the firing takes place during the one year reserve period or afterwards." Grillasca–Pietri, 233 F. Supp. 2d at 265.

In the case at hand, Plaintiff alleges that CIFS "did not hold [her] position open for her for one year after she reported her work-related injury to SIF." ECF No. 56, at 17. Specifically, Plaintiff alleges that "she returned to work within the 1-year reserve period, but was not allowed to perform the essential functions of her job and there was no assignment of said functions despite the fact that she requested it." Id. at 17. CIFS, on the other hand, contends that it had just cause to terminate Plaintiff for not passing the Series 7 exam. ECF No. 33-2, at 14. It is further contended by CIFS that Plaintiff had been reinstated in her position after her leave concluded. Id.

As stated earlier, Defendant's termination of Plaintiff's employment due to her failure to pass the Series 7 exam constituted just cause. See Escobar Galíndez v. Ortho Pharm., 328 F.

Supp. 2d 213, 235 (D.P.R. 2004) (explaining that courts look to the definition of "just cause" in Law 80 when analyzing a Law 45 claim). Therefore, Plaintiff's Law 45 claim fails because the remedies provided in Article 5(a) "are triggered only when an employee is fired without just cause." See Grillasca-Pietri, 233 F. Supp. 2d at 265.

Furthermore, even assuming arguendo that just cause for her termination was not present, Plaintiff's Law 45 claim would still fail because she was reinstated in her position. Plaintiff was on SIF leave on March 28, 2016 and March 29, 2016 and she returned to work on March 30, 2016. ECF No. 33-1, at 12, ¶¶ 85, 86; ECF No. 56, at 17. Plaintiff was not terminated until March 31, 2016, two days after her SIF leave had concluded. Id. at 12, ¶ 88. Plaintiff's claim that she was not reinstated into her position is untenable as she has not cited to any record evidence to support her allegations that CIFS prohibited her from performing the essential functions of her position upon her return. Therefore, Plaintiff's Law 45 claim is DISMISSED WITH PREJUDICE because she was terminated for just cause.

### 3. Plaintiff's Puerto Rico Law 115 Claim

Lastly, Plaintiff claims that she was retaliated against for taking leave and benefits under the Puerto Rico State Insurance Fund. ECF No. 56, at 12-15. "Law 115 is largely identical in scope to Title VII retaliation claims." Moreta v. First Transit of PR, Inc., 39 F. Supp. 3d 169, 182 (D.P.R. 2014). Law 115 "prohibits employers from discriminating against employees for 'offer[ing] or attempt[ing] to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico.'" Id. (quoting 29 L.P.R.A. § 194(a)). "Law 115 also prohibits retaliation for seeking benefits with the State Insurance Fund." See Rios v. Municipality of Guaynabo, Civ. No. 14-1703, 2017 WL 3412083, at *3 n.5 (D.P.R. Aug. 9, 2017).

A Puerto Rico Law 115 claim relying on circumstantial evidence is analyzed under the McDonnell Douglas burden shifting framework. Godoy v. Maplehurst Bakeries, Inc., 747 F. Supp. 2d 298, 318 (D.P.R. 2010). "The employee must prove the violation through direct or circumstantial evidence that he participated in a protected activity and was subsequently discharged, threatened or discriminated against in his employment. Once done, the employer must provide a nondiscriminatory legitimate reason for the discharge, wherein the plaintiff must prove said reason is pretextual." Tirado González v. Wendco of Puerto Rico, Inc., Civ. No. 14-1316, 2018 WL 377262, at *8 (D.P.R. Jan. 10, 2018); see 20 L.P.R.A. § 194a(c).

### a. Plaintiff's Prima Facie Burden

In the case at hand, there is no direct evidence of retaliation so Plaintiff's Law 115 claim will be analyzed under the McDonnell Douglas burden shifting framework. "First, the plaintiff must establish a prima facie case of retaliation, showing that: (1) she was engaged in protected conduct; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse action." Moreta, 39 F. Supp. 3d at 179 (citing Collazo v. Bristol–Myers Squibb Mfg., Inc., 617 F.3d 39, 46 (1st Cir. 2010)). "This is 'a small showing that is not onerous and is easily made.'" Id. (citations omitted).

In the case at hand, CIFS concedes that Plaintiff has satisfied the first two prongs of her prima facie burden that she received treatment at the SIF and that she was terminated from her employment. ECF No. 33-2, at 10. CIFS, however, argues that Plaintiff is "unable to establish a causal connection between her treatment at the SIF and her termination." ECF No. 33-2, at 10. "Very close temporal proximity between protected activity and a materially adverse action may give rise to an inference of causation." Santana, 81 F. Supp. 3d at 137; Santos Santos v. Puerto Rico Police Dept., 63 F. Supp. 3d 181, 190 (D.P.R. 2014) ("A showing of protected activity

closely followed by an adverse action is indirect proof of a causal connection between the employment action and the protected activity."). In the case at bar, Plaintiff returned from SIF leave on March 30, 2016 and was terminated on March 31, 2016. Plaintiff has satisfied her burden to show a causal connection between her SIF leave and termination because she was terminated one day after she returned from SIF leave. See Santana-Colón, 81 F. Supp. 3d at 137. Thus, Plaintiff has satisfied her prima facie burden.

### b. Defendant's Burden at Step Two of the **McDonnell Douglas** Framework

Since Plaintiff has established her prima facie burden, "the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." Salva v. Eagle Global Logistics, Civ. No. 04–2280, 2006 WL 2685109, at *4 (D.P.R. Sept. 18, 2006). As stated earlier, Plaintiff was required by her employment contract to pass the Series 7 exam within 12 months of accepting the employment offer. ECF No. 33-9. After Plaintiff failed to pass the Series 7 exam by December 29, 2015, she was given an additional 45 days in the Final Warning to pass the exam. ECF No. 41-8. On March 24, 2016, Plaintiff took the Series 7 exam but did not pass. ECF No. 33-1, at 12, ¶ 84; ECF No. 33-8, at 3, ¶ 11. Defendant has proffered a legitimate and non-discriminatory reason that Plaintiff was terminated because she did not pass the Series 7 exam. ECF No. 33-2, at 10-11.

### c. Plaintiff's Burden at Step Three of the **McDonnell Douglas** Framework

Because Defendant offered a legitimate non-discriminatory reason for Plaintiff's dismissal, the burden shifts back to Plaintiff to show that Defendant's justification was a pretext for retaliation. Salva, 2006 WL 2685109, at *4. Plaintiff alleges that her termination was pretextual because "[w]hen CIFS issued the January 12 Final Warning to [Plaintiff] giving her a peremptory 45-day period to take and pass the Series 7 exam, Defendant very well knew that she

was not going to pass it because she continued under psychiatric treatment for the exacerbation of her mental symptoms and suffering from the side-effects of the antipsychotic medications she was taking." ECF No. 56, at 15.

Plaintiff's allegation that Defendant knew at the time that it issued the Final Warning that she was not going to pass the Series 7 exam because she continued under psychiatric treatment and suffered from the side-effects of antipsychotic medications is unsupported by the record evidence. First, there is no indication that Defendant knew the specific emotional condition for which Plaintiff was being treated when it issued the Final Warning on January 12, 2016. Plaintiff has also not cited to any evidence in the record that Defendant knew the specific medication that she was taking for her emotional condition. What the record evidence does reflect, however, is that on December 30, 2015, Plaintiff responded to the Formal Warning and informed that she was under physician prescribed medication that made it difficult for her to get up in the mornings. The fact that Plaintiff was taking medication that made it difficult for her to get up in the mornings does not necessarily imply that Defendant knew that Plaintiff was taking antipsychotic medications. Furthermore, although Plaintiff was taking medication on December 30, 2015, that does not confirm that the Defendant knew that she was still taking medication when the Final Warning was issued on January 12, 2016, especially considering that Plaintiff had returned from SIF leave and had not requested additional SIF leave at the time that the Final Warning was issued.

Once again, Plaintiff's employment contract specifically states that she was required to pass the Series 7 exam within 12 months of accepting the offer of employment. ECF No. 33-9, at 1. After the December 29, 2015 deadline passed, CIFS issued a Final Warning on January 12, 2016 and granted Plaintiff an additional 45 days to pass the Series 7 exam. ECF No. 41-8.

Plaintiff failed to pass the Series 7 exam and was terminated on March 31, 2016. ECF No. 33-1, at 12, ¶ 88. Plaintiff has not presented any evidence showing that the Final Warning or her termination were mere pretext for retaliating against her for having taken protected SIF leave. Furthermore, Plaintiff's claim that "Defendant very well knew that she was not going to pass it" when it issued the Final Warning is a conclusory allegation and unsupported by the record evidence. ECF No. 56, at 15.

When the Final Warning was issued, Plaintiff was not under SIF leave, nor had she requested additional SIF leave. Once she requested additional SIF leave, it was approved. She did not request postponement of the March 24, 2016 Series 7 exam due to her SIF leave. She took the exam and failed. The fact that Plaintiff had a mental condition and was taking medication when she studied for and took the Series 7 exam does not mean that she was terminated in retaliation for her having taken protected SIF leave. Plaintiff has failed to produce evidence for a reasonable jury to find that Defendant's proffered reason for her termination was pretextual, dooming her Law 115 claim. Accordingly, Plaintiff's Puerto Rico Law 115 claim is DISMISSED WITH PREJUDICE.

**IV.    Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 33) is GRANTED. Accordingly, the complaint is DIMISSED WITH PREJUDICE.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 23rd day of December, 2020.

s/Marcos E. López____
U.S. Magistrate Judge
